# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

RUTH A. WOODALL, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-07-421-FHS-SPS
 )
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
 )
        Defendant. )

## REPORT AND RECOMMENDATION

The claimant Ruth A. Woodall requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 7, 1961, and was forty-five years old at the time of the administrative hearing. She has a high school education and previously worked as a licensed practical nurse. The claimant alleges she has been unable to work since July 30, 2003, because of fibromyalgia and right club foot.

## Procedural History

On December 27, 2004, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Michael Kirkpatrick conducted a hearing and found the claimant was not disabled on July 5, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant had the residual functional capacity ("RFC") to perform a full range of sedentary work, *i. e.*, that the claimant could lift and/or carry no more than ten pounds occasionally and five pounds frequently; stand and/or walk for at least two hours total during an eight-hour workday; and sit for at least six hours total during an eight-hour workday (Tr.

17). The ALJ concluded that the claimant was not disabled pursuant to Rule 201.21 of the Medical-Vocational Guidelines (the "grids") (Tr. 22).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate her treating physician's opinion; (iii) by failing to include all of her limitations in the RFC determination; (iii) by failing to properly evaluate her credibility; and, (iv) by failing to properly apply the grids. The undersigned Magistrate Judge finds the third and fourth contentions persuasive.

The record reveals that the claimant had severe impairments of fibromyalgia and a history of right club foot (Tr. 15). At the administrative hearing, the claimant testified the pain associated with her fibromyalgia was the main reason she quit working in 2003 (Tr. 224). She explained that the fibromyalgia caused her pain and fatigue, problems sleeping, "fogs" making it hard to concentrate, twitching and jumping in her muscles, and difficulty using her hands, legs, and arms. The claimant no longer drove because of pain and her medication made her dizzy (Tr. 226). She did not do yard work, cooking, or laundry, but tried to help pick up the house, although her daughter and husband did most of the housework. She no longer did the shopping because of pain (Tr. 226-27). The claimant's hands became sore when writing, and her club foot made walking painful. The claimant's standing was limited to fifteen minutes at a time, and she could not walk for thirty minutes at a time (Tr. 227-28). If she did not take her medication, the claimant could not focus on anything except for her pain. The claimant's blood pressure medication caused her to suffer

from urinary accidents a few times a week, so she wore a pad designed for such a problem (Tr. 229). The claimant had problems grasping with her right hand, could no longer lift a gallon of milk or peel a potato, and had painful knots on her feet, neck, hands, elbows, and knees. She spent approximately 90 percent of the day with her feet elevated because when standing or sitting she experienced a "pulling sensation of burning and throbbing." (Tr. 230-31). The claimant also experienced headaches four or five times per week which she associated with her fibromyalgia (Tr. 231).

In the disability report completed by the claimant in support of her disability claim, she noted that her next visit with her physician would be "when I can afford a visit." (Tr. 101, 102). She also referenced her financial condition when she indicated she had not had any further tests because she was "still paying for my last lab [and] x-rays, so I cannot afford any test right now." (Tr. 103).

The ALJ summarized the claimant's testimony and found it was not completely credible. Some of the reasons he relied upon included that: (i) the claimant "ha[d] not really sought or required any significant or ongoing medical treatment since [her onset date of July 30, 2003, and] her treatment ha[d] been very conservative[;]" and, (ii) treatment notes from the claimant's treating physician "d[id] not show any complaints that the claimant was having difficulty with her hands or feet[.]" (Tr. 19).[2] The ALJ determined "that the

---

[2] The ALJ relied on factors other than those mentioned above in finding the claimant was not credible, *e. g.*, she previously worked with her club foot, her daily activities, lack of complaints to her treating physician, and her earnings records (Tr. 19-21). Although some of these reasons may be supported by the record, a credibility determination is based on a weighing of all the factors "in combination." *See Huston v. Bowen*, 838 F.2d 1125, 1132-33 n.7 (10th Cir. 1988)

claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. 19).

Deference must be given to an ALJ's credibility determination unless the ALJ misread the medical evidence taken as a whole. *Casias*, 933 F.2d at 801. An ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to the evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ's credibility determination clearly fell below these standards.

First, the ALJ failed to consider the claimant's financial situation when he concluded that she had not sought ongoing medical treatment. The record suggests that the claimant's finances may have kept her from going to the doctor and having tests performed (Tr. 101-03), but the ALJ made no inquiry of the claimant at the hearing about the documentation in the record or any inability to pay for treatment. *See*, *e. g.*, *Lee v. Barnhart*, 117 Fed. Appx. 674, 681 (10th Cir. 2004) ("[I]t was [the ALJ's] duty to inquire, as part of development of the record, whether [the claimant] could in fact afford treatment and whether any alternative

---

("When weighed in combination, such factors can shed light on the determination of credibility."). As discussed herein, not all of the factors relied upon by the ALJ are supported by the record, so the undersigned Magistrate Judge cannot weigh the remaining factors. *See Bakalarski v. Apfel*, 1997 WL 748653, at *3 (10th Cir. Dec. 3, 1997) ("[W]hen several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, we are precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination.") [unpublished opinion].

forms of payment were available to [her].") [unpublished opinion]. *See also Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("[T]he ALJ failed to comment on the important evidence that treatment was inconsistent because of Mrs. Thomas's apparent inability to afford the medications.") [unpublished opinion]. And, more importantly, the ALJ failed to discuss the four-part test applicable to the failure to pursue treatment: (i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and, (iv) whether the excuse was justified. *Frey*, 816 F.2d at 517, *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986). An inability to pay may be a justification for failing to pursue treatment, *see, e.g., Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993) (An inability to pay for recommended treatment may justify the failure to follow the treatment), so application of the test by the ALJ was warranted in this case. *See Lee*, 117 Fed. Appx. at 681 ("This analysis applies to cases in which the claimant fails to pursue medical treatment because he cannot afford it."), *citing Thompson*, 987 F.2d at 1489-90.

Second, the ALJ found the claimant's complaints about her hands and feet were not credible because they were not supported by the treatment notes of her treating physician. However, the record reveals that the claimant *did* complain to her treating physician about difficulty with her hands, feet, and legs. Between July 15, 2003, and June 8, 2007, the claimant complained of problems with her hands on four occasions (Tr. 194, 197), problems with her feet on five occasions (Tr. 190, 194, 196, 197, 209), and problems with her legs on

four occasions (Tr. 190, 196, 199, 207). It was error for the ALJ to ignore this evidence. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted]. *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence.").

The claimant further argues that the ALJ erred by finding she could perform a full range of sedentary work and in conclusively relying on the grids to determine she was not disabled. She contends that her fibromyalgia is a pain syndrome, *see, e. g., Duncan v. Apfel*, 1998 WL 544353, at *2 (10th Cir. Aug. 26, 1998) ("Fibromyalgia is defined as a syndrome of pain in the fibrous tissues, muscles, tendons, ligaments, etc.") [unpublished opinion], *citing* The Merck Manual of Diagnosis & Therapy, at 1369 (Robert Berkow & Andrew J. Fletcher eds., 16th ed. 1992), and is therefore a nonexertional impairment precluding application of the grids. *See, e. g., Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991) (finding that use of the grids is "particularly inappropriate when evaluating nonexertional limitations such as pain"), *citing Channel v. Heckler*, 747 F.2d 577, 580-81 (10th Cir. 1984).

The ALJ could conclusively apply the grids by finding that the claimant's pain was insignificant. *See Thompson*, 987 F.2d at 1490-91 ("Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence

for the ALJ to find that the claimant's pain is insignificant."), *citing Ray v. Bowen,* 865 F.2d 222, 225 (10th Cir. 1989) *and Gossett v. Bowen,* 862 F.2d 802, 807-08 (10th Cir. 1988). However, the ALJ determined at step two of the sequential analysis that the claimant's fibromyalgia was a severe impairment, *i. e.*, having more than a minimal effect on her basic work activities. Such a finding at step two "makes it impossible to conclude at step four that her pain was insignificant, and [the ALJ] therefore erred by relying conclusively on the grids." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) [unpublished opinion]. *See also Duncan*, 1998 WL 544353, at *2 ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five."). Thus, "[o]n remand, [the ALJ] must assess the level of pain [the claimant] suffers, and determine whether there are jobs she can do with that level of pain." *Baker*, 84 Fed. Appx. at 13-14, *citing Thompson*, 987 F.2d at 1490. *See also* Soc. Sec. Rul. 96-9p, 1996 WL 374185, *5 (noting that when an ALJ cannot rely conclusively on the grids, he "must cite examples of occupations or jobs the [claimant] can do and provide a statement of the incidence of such work in the region where the [claimant] resides or in several regions of the country.").

    For the reasons set forth above, the undersigned Magistrate Judge recommends that the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis at steps four and five of the sequential process. On remand, the ALJ should properly analyze the claimant's credibility, and if such analysis requires any adjustment to the claimant's RFC, the ALJ should redetermine what work, if any, the claimant can perform and whether she is disabled. If he finds there is work (other than past relevant work) the

claimant can perform, he should cite examples of such jobs and their incidence in the regional and national economies.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Any objections to this Report and Recommendation must be filed within ten days.

**DATED** this 9th day of February, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**